IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN ROBERTS, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 12-1296 |
| | ) |
| | ) Judge David Stewart Cercone/ |
| | ) Magistrate Judge Maureen P. Kelly |
| ALLEGHENY COUNTY, a Municipal | ) |
| Corporation and Political Subdivision of | ) |
| The Commonwealth of Pennsylvania; | ) Re: ECF No. 10 |
| RICH FITZGERALD, County Executive; | ) |
| DANIEL SULLIVAN, Pittsburgh Police | ) |
| Officer, | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed on behalf of Defendant

Daniel Sullivan [ECF No. 10] be granted as to all federal claims asserted against Defendant

Sullivan but denied as to all state law claims, in light of Defendant Sullivan's failure to support

his Motion to Dismiss these claims with any legal authority or analysis.

## II.   REPORT

### A.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kevin Roberts ("Plaintiff") filed this *pro se* civil rights action against Daniel

Sullivan, a City of Pittsburgh Police Officer ("Sullivan"), Allegheny County, and Rich

Fitzgerald, the Allegheny County Executive,[1] alleging violations of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as the violation of his rights under the Pennsylvania Constitution. [ECF No. 5]. Plaintiff's Complaint alleges that his rights were violated when he was arrested without probable cause and then prosecuted and convicted for theft and unlawful possession of a firearm, when a reasonable investigation would have revealed that he could not have committed the crime. Sullivan has filed a Motion to Dismiss, contending that the facts alleged in the Complaint, and as discerned through indisputably authentic documents attached to the Complaint and filed on the public docket of the underlying criminal proceedings, render each claim asserted against him unsustainable as a matter of law.

As indicated in the materials attached to Plaintiff's Complaint, Sullivan is a City of Pittsburgh Police Officer. On the evening of August 29, 2006, Sullivan was called to the Zone 5 Police Station at the request of his sergeant to investigate a theft. Upon arriving at the station, he met with Nathan Hubbard, who was visibly distraught. Sullivan knew Mr. Hubbard, an elderly gentleman from the Homewood section of the City where Sullivan routinely patrolled. Sullivan and fellow officers frequently would check on Mr. Hubbard because of his age and the violent neighborhood in which he resided. [ECF No. 5-2, pp. 28-30, 70, 79-80].

Mr. Hubbard reported that Plaintiff approached him and asked for a ride to Kelly Street. Mr. Hubbard had known Plaintiff since he was a child, and so Mr. Hubbard agreed to give him a ride. Mr. Hubbard routinely kept an unloaded .22 caliber gun on the front seat of his truck for protection. Mr. Hubbard reported that after arriving at his destination, Plaintiff reached over to

---

[1] On August 27, 2013, this Court entered an Order granting Plaintiff's Motion to Correct/Amend Complaint [ECF No. 34] terminating the current Allegheny County Executive, Rich Fitzgerald, from this action and substituting Dan Onorato, the Allegheny County Executive in office at the time the events complained of took place.

the front seat of the truck with a bag in his hand and slid the gun under the bag. Plaintiff then left the truck, taking the gun and bag with him. Mr. Hubbard yelled at Plaintiff to return the gun, but Plaintiff ran off. [ECF No. 5-2, p. 18]. Mr. Hubbard immediately drove to the Zone 5 police station to report the theft.

Mr. Hubbard identified Plaintiff by name, as well as the Kelly Street address where he drove Plaintiff. After interviewing Mr. Hubbard, Defendant Sullivan went to the Kelly Street address and spoke with Plaintiff's brother to confirm Plaintiff's identity and to ascertain his location. Plaintiff's brother confirmed his relationship with Plaintiff and advised Sullivan that Plaintiff was homeless and did not reside with him. [ECF No. 5-2, pp. 30-32]. Sullivan then searched the Pennsylvania criminal database and learned that Plaintiff was a convicted felon and not eligible to possess a firearm under the Pennsylvania Uniform Firearms Act. Based upon the information received from Mr. Hubbard and his investigation, Sullivan completed a Probable Cause Affidavit in support of a criminal complaint, charging Plaintiff with theft and unlawful possession of a firearm. A warrant was then issued for Plaintiff's arrest. [ECF No. 5-2 pp. 3-15].

Three days later, on September 2, 2006, Sullivan responded to a 911 call at Mr. Hubbard's home, reporting that Plaintiff was on the property. Plaintiff was found hiding in an adjacent wooded area and placed under arrest. Plaintiff alleges that he denied stealing Mr. Hubbard's gun, but was arrested anyway.

On September 6, 2006, Russell Poindexter ("Poindexter") was arrested for two counts of unlawful possession of a firearm, two counts of possession of a firearm without a license, one count of receiving stolen property, and one count of possession of marijuana. In the course of his arrest, it was discovered that one of the weapons in Poindexter's possession was the same weapon which had been stolen from Mr. Hubbard. [ECF No. 5-2, pp. 98-100].

Plaintiff's preliminary hearing was conducted on September 12, 2006. Mr. Hubbard testified at the hearing as to the events of August 29, 2006. He identified Plaintiff as the individual who grabbed his .22-caliber gun from the front seat of his truck. Mr. Hubbard also explained his long term relationship with the Plaintiff. Defendant Sullivan testified to the facts set forth in the criminal complaint, including his interviews with Mr. Hubbard and Plaintiff's brother, as well as his computer search for Plaintiff's criminal record. Sullivan also testified as to the facts surrounding Plaintiff's subsequent arrest. Plaintiff's attorney attempted to ask Sullivan if he found the gun on or near the Plaintiff on the evening of Plaintiff's arrest. Before Sullivan could answer, the Assistant District Attorney objected that the question was beyond the scope of the direct examination, and the objection was sustained. Plaintiff was held for trial and incarcerated for fourteen months prior to trial. [ECF No. 5-2, pp. 19-29].

Plaintiff's non-jury trial was convened before Judge John A. Zottola in the Criminal Division of the Court of Common Pleas of Allegheny County, Pennsylvania, on November 7 and 8, 2007. [ECF 5-2, pp. 43-92]. Mr. Hubbard testified as to his recollection of events on the night his gun was stolen, again identifying Plaintiff and indicating that Plaintiff ran off with the gun after grabbing it from the front seat of the truck. While Plaintiff has alleged that Mr. Hubbard suffers from dementia, it cannot reasonably be disputed that Mr. Hubbard responded appropriately to questions on direct and cross-examination.

Defendant Sullivan testified as to his history with Mr. Hubbard, the neighborhood Mr. Hubbard lived in, Mr. Hubbard's lack of confusion as to the events surrounding the theft, his own investigation of the theft, and Plaintiff's criminal background. Sullivan also testified that the gun was recovered from Poindexter four days later by Officers Lear and Buford at a traffic stop. [ECF No. 5-2, p. 76-80]. Sullivan assisted in the transportation of another occupant of the

vehicle involved in the traffic stop, and took possession of the gun. Sullivan ran the serial number through a state database and determined the gun was the .22 caliber gun owned by Mr. Hubbard. [Id.; and see EFC No. 5-2, p. 94].

Plaintiff testified on his own behalf, confirmed his familiarity with Mr. Hubbard, and denied that he stole Mr. Hubbard's gun. Judge Zottola found Plaintiff guilty of each count charged and on February 4, 2008, sentenced Plaintiff to a period of incarceration of five to ten years. [ECF No. 12-4, p. 4].

Plaintiff and his counsel filed a series of post-sentencing motions and appeals based on information Plaintiff acquired from Poindexter while both men were incarcerated at the State Correctional Institution at Forest, indicating that the gun at issue had been stolen from Mr. Hubbard at least five days before Plaintiff was in Mr. Hubbard's truck. On September 13, 2010, the Commonwealth of Pennsylvania filed a Petition for Nolle Prosse, indicating that it no longer wished to pursue Plaintiff's prosecution for the crimes charged. [ECF No. 5-3, pp. 1-13]. On September 26, 2010, Judge Zottola ordered the case against Plaintiff nolle prossed. [ECF No. 5, p. 5].

Plaintiff commenced this civil rights action on September 10, 2012. With regard to Defendant Sullivan, Plaintiff's Complaint alleges that Sullivan withheld evidence from the district attorney by failing to disclose that the gun was not found in Plaintiff's possession at the time of his arrest, but instead was found in Poindexter's possession four days later. Plaintiff also alleges that Sullivan acted unreasonably by failing to investigate how Poindexter came into possession of the gun and by relying on Mr. Hubbard who was known to suffer from dementia. [ECF No. 5, pp 6-7]. Plaintiff alleges that because the gun was in Poindexter's possession days

after Plaintiff's arrest, Plaintiff could not have been guilty of stealing the gun and illegally possessing it. [ECF No. 5, pp. 6- 7].[2]

Plaintiff's claims against Defendant Sullivan include Fourth Amendment claims for false arrest and malicious prosecution; a Fourteenth Amendment claim for selective enforcement arising out of Defendant Sullivan's failure to arrest Mr. Hubbard for carrying a weapon without a license; a Sixth Amendment claim that Defendant Sullivan violated Plaintiff's right to a fair trial by concealing evidence that the weapon was located in Mr. Poindexter's possession; Fifth and Fourteenth Amendment substantive and procedural due process claims arising out of Defendant Sullivan's failure to investigate how Poindexter came into possession of Mr. Hubbard's gun; and an Eighth Amendment claim for wrongful conviction and false imprisonment, as well as state law claims.

### B.    STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. In addition, the court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, indisputably authentic documents, Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n. 2 (3d Cir. 2006), documents that form the basis of a claim, Lum v. Bank of America, 361 F.3d 217,

---

[2] Throughout his Complaint, Plaintiff disregards the very reasonable possibility that Plaintiff could have stolen the gun from Mr. Hubbard on August 29, 2006, and sold it or lost it prior to September 2, 2006, such that Poindexter's possession of the gun on September 6, 2006, would not contradict the basic elements of Plaintiff's arrest warrant.

.221 n. 3 (3d Cir. 2004) (abrogation on other grounds recognized by In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 323 n. .22 (3d Cir. 2010)), and "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading...." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). Upon review, a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).

The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In Twombly, the Supreme Court held that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678. Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 679.

In Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but

may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' The plaintiff must show 'the allegations of his or her complaints are plausible. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.' [This] 'plausibility' determination will be 'a context – specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

Several exhibits have been attached to the Plaintiff's Complaint. However, consideration of these exhibits by the Court does not convert Defendant Sullivan's Motion to Dismiss for failure to state a claim into a motion for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d at 560 ("... certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment"); and see, Spencer v. City of Philadelphia, No. 09-123, 2012 WL 1111141 (W.D. Pa. Apr. 2, 2012).

With particular relevance to Defendant Sullivan's Motion to Dismiss, Plaintiff has attached to his Complaint the underlying police reports, arrest warrant, probable cause affidavit, as well at trial and post-sentencing hearing transcripts. Plaintiff is on notice of the contents of each document and, therefore, the exhibits to the Complaint may be relied upon without converting the motion to dismiss into a motion for summary judgment. Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Ordinarily, when a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d .229, 235 (3d Cir. 2004).

## C.    DISCUSSION

Section 1983 provides a vehicle for an individual to assert claims for the violation of his or her federal constitutional rights. Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010). When analyzing a Section 1983 claim, the Court's initial inquiry must focus on two essential elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981); see also Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005). Sullivan, who is a police officer, does not dispute that he was acting under the color of law in this case. Therefore, the Court need only consider the second requirement of Section 1983 — whether a constitutional violation has been adequately asserted to survive Defendant Sullivan's Motion to Dismiss.

### 1.    Statute of Limitations Bars False Arrest, False Imprisonment and Selective Enforcement Claims

Based upon the documents attached to Plaintiff's Complaint, it is clear that the applicable Pennsylvania statute of limitations is a complete bar to Plaintiff's claims for false arrest, false imprisonment and selective enforcement.[3]

---

[3] While Defendant has not raised the applicable statute of limitations in his Motion to Dismiss, "when a statute-of-limitations defense is apparent from the face of the complaint, a court may *sua sponte* dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A." McPherson v. United States, 392 F. App'x 938, 943 (3d Cir. 2010).

Under Pennsylvania law, a Section 1983 claim must be filed no later than two years from the date of the alleged violation. <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F. 3d 451 (3d Cir. 1996); <u>Troutman v. Bartlett</u>, No. 11-315E, 2012 WL 6808559 *4 (W.D. Pa. 2012) *report and recommendation adopted*, No. 11-315, 2013 WL 85252 (W.D. Pa. Jan. 8, 2013). The accrual date of Plaintiff's Section 1983 claims is determined by reference to federal law and occurs "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." <u>Wallace v. Kato</u>, 549 U.S. 384, 388 (2007).

In civil rights actions challenging an underlying criminal conviction, the accrual date can be blurred by the holding of the United States Supreme Court in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). In <u>Heck</u>, the Supreme Court held that a claim for malicious prosecution accrues only when "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." <u>Dique v. New Jersey State Police</u>, 603 F.3d at 186, quoting <u>Heck.</u> The rationale supporting the deferral of Section 1983 claims for malicious prosecution lies in principles of finality and comity.

> One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused. This requirement "avoids parallel litigation over the issues of probable cause and guilt ... and it precludes the possibility of the claimant [sic] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction." Furthermore, "to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit." This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack). We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the

unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

Heck v. Humphrey, 512 U.S. at 484-86 (citations omitted).

While Heck would appear to defer the accrual date for all of Plaintiff's claims, and certainly for his malicious prosecution claim, the holding in Heck is not so broad. In Wallace v. Kato, the Supreme Court expressly addressed the question of when a Section 1983 claim for false arrest in violation of the Fourth Amendment accrues. The Court held that such claim (and the accompanying claim for false imprisonment) accrues immediately upon the arrest at issue, and the period of limitations begins to run as soon as the false imprisonment ends, i.e., when the arrestee becomes held pursuant to legal process. "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Wallace, 549 U.S. at 389–90 (citations and footnote omitted).

In Dique, 603 F.3d at 187, the United States Court of Appeals for the Third Circuit extended Wallace to selective enforcement claims.

The [Wallace] Court held that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Id. at 397, 127 S. Ct. 1091. The Court also clarified that the Heck bar is applicable only when, at the time the § 1983 suit would normally accrue, there is an existing criminal conviction:

"[T]he Heck rule for deferred accrual is called into play only when there exists a conviction or sentence that has not been ... invalidated, that is to say, an outstanding criminal judgment. It delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn."

Id. at 393, 127 S.Ct. 1091 (internal quotation marks omitted). The Court clarified that it was not holding that "an action which would impugn an anticipated future conviction cannot be brought until that conviction occurs and is set aside." Id.

* * *

> Following <u>Wallace</u> . . . . in a case of selective-enforcement we will no longer require that the complainant have been convicted and have had that conviction reversed, expunged or invalidated. If we were to do so, we would be putting the complainant in the "bizarre extension of <u>Heck</u>" where the cause of action might never accrue if there were no prosecution or if there were a dismissal or an acquittal.

<u>Dique</u>, at 187-88.

Plaintiff's Complaint and the exhibits attached thereto reveal that he was arrested on September 2, 2006.  Any alleged false imprisonment claim ended upon the date of his conviction on November 8, 2007, and Plaintiff's selective enforcement claim accrued no later than November 7, 2007, the date Mr. Hubbard was granted immunity from prosecution for carrying a weapon in his car without a license.  [ECF No. 1-2, pp. 58-60]. Because Plaintiff's Fourth Amendment claims for false arrest/false imprisonment and his Fourteenth Amendment claim for selective enforcement were not commenced until the filing of his Complaint on September 14, 2012, these claims are well beyond the applicable two-year statute of limitations. Accordingly, it is respectfully recommended that the claims for false arrest, false imprisonment and selective enforcement be dismissed with prejudice.

## 2.  Fourth Amendment Malicious Prosecution Claim

While the statute of limitations does not impede Plaintiff's claim for malicious prosecution, the exhibits attached to Plaintiff's Complaint make clear that probable cause existed to arrest Plaintiff for the crimes charged, rendering his claim for malicious prosecution unsustainable as a matter of law.

In order to establish a Fourth Amendment malicious prosecution claim pursuant to Section 1983, a plaintiff must show the following: 1) the defendant initiated a criminal proceeding; 2) the criminal proceeding ended in the plaintiff's favor; 3) the proceeding was

12

initiated without probable cause; 4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and 5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (citing Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)); and see, Thompson v. Howard, No. 09-1416, 2013 WL 2338247 (W.D. Pa. May 29, 2013).

Plaintiff's malicious prosecution claim is resolved by a determination of whether probable cause was present as to the charges asserted against Plaintiff.

> Probable cause exists if there is a fair probability that the person committed the crime at issue. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested. A police officer may be liable for civil damages for an arrest if no reasonable competent officer would conclude that probable cause exists.

Wilson v. Russo, 212 F.3d 781, 789–90 (3d Cir. 2000) (citing Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995) (internal marks and citations omitted). "Therefore, the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005).

The record of Plaintiff's criminal proceeding, including Mr. Hubbard and Sullivan's testimony, makes clear that Plaintiff's arrest and prosecution were predicated upon reasonably trustworthy information received from Mr. Hubbard that Plaintiff had stolen a gun, and upon Defendant Sullivan's research of Plaintiff's criminal background rendering his possession of a weapon illegal.

Mr. Hubbard arrived at the police station visibly upset that his gun had just been stolen. Sullivan interviewed Mr. Hubbard, who was known to Sullivan to be a trustworthy resident of

the community, with whom he had a longstanding relationship. Mr. Hubbard explained the

circumstances of the theft, identified Plaintiff by name as a passenger in his truck, and described

Plaintiff's behavior in sneaking the gun out of the truck and running off. Mr. Hubbard reported

that he knew Plaintiff for many years and could identify Plaintiff as the person who had taken the

gun. In addition, Plaintiff accurately reported the address he drove Plaintiff and the address was

determined to be the home of Plaintiff's brother. With regard to the charge of unlawful

possession of a firearm, Sullivan located Plaintiff's criminal background on a state database and

correctly determined that Plaintiff's criminal background made it illegal for him to possess a

handgun.

Based upon the information presented to Sullivan at the time the arrest warrant was

issued, the Court concludes that there was probable cause to charge Plaintiff with theft and

unlawful possession of a weapon; there was at least a "fair probability" Plaintiff had committed

the theft and was illegally in possession of a weapon at the time the arrest warrant was issued.

Plaintiff's Complaint criticizes Sullivan's investigation of the crime after the eventual

recovery of the handgun Poindexter, contending that Sullivan violated his rights by failing to

investigate where and when Poindexter came into possession of the weapon. However, once

police establish probable cause, as here, the police are neither required to investigate

independently every claim of innocence, nor compelled by the Constitution to perform an error-

free investigation of such a claim. See, Baker v. McCollan, 443 U.S. 137, 145–46 (1979)).

Because probable cause existed for Plaintiff's arrest and eventual prosecution, Plaintiff

cannot sustain a claim for malicious prosecution against Defendant Sullivan and it is respectfully

recommended that the Motion to Dismiss on this basis be granted. Godfrey v. Pennsylvania, No.

13-1188, 2013 WL 2005109 (3d Cir. May 15, 2013) (to the extent that plaintiff's claims were for

false arrest and imprisonment, and malicious prosecution, he needed to point to facts suggesting that defendant lacked probable cause to believe he had committed the offense for which he was arrested and failure to do so warranted dismissal). Further, because it is clear that any amendment to the Complaint with regard to Plaintiff's malicious prosecution claim would be futile, it is recommended that the dismissal be with prejudice.

### 3. Sixth Amendment Claim

Plaintiff alleges that Defendant Sullivan violated his Sixth Amendment right to a fair trial by concealing evidence that Plaintiff was not in possession of the gun at the time of his arrest, as well as concealing evidence that the weapon was found four days later during Poindexter's unrelated arrest. [ECF No. 5, pp. 5-6, ¶¶ 1, 4]. While the exhibits attached to Plaintiff's Complaint leave no doubt that Sullivan testified as to these allegedly concealed facts, it is also certain that Plaintiff's allegations do not state a claim implicating any right secured by the Sixth Amendment.

The Sixth Amendment guarantees the following rights to the accused in a criminal proceeding: "a speedy and public trial, by an impartial jury ... to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have a compulsory process for obtaining witnesses in his favor; and to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Viewing the allegations of the Complaint as well as the exhibits thereto in the light most favorable to Plaintiff, Plaintiff cannot sustain a claim for the violation of any of these rights and it is recommended that this claim be dismissed with prejudice. Simpson v. City of Coatesville, No. 10-0100, 2010 WL 3155307 (E.D. Pa. July 28, 2010).

#### 4. Fifth and Fourteenth Amendments Fair Trial Claims

Plaintiff alleges that Defendant Sullivan violated his rights to due process rights under the Fifth and Fourteenth Amendments when Sullivan failed to testify that the gun was not found with Plaintiff during his arrest, but instead was located in Mr. Poindexter's possession four days later. In addition, Plaintiff alleges the violation of his rights to due process as a result of Sullivan's "grossly negligent" investigation into Poindexter's possession of the weapon, which he alleges resulted in Plaintiff's wrongful conviction and incarceration.

Initially, Plaintiff's Fifth Amendment claim fails because the due process clause of the Fifth Amendment only applies to federal officials, and Sullivan is a state official. See, Bergdoll v. City of York, 515 F. App'x 165, 170 (3d Cir. 2013) (citing Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983)). Accordingly, it is respectfully recommended that Plaintiff's Fifth Amendment claim be dismissed with prejudice.

Plaintiff's substantive due process claim under the Fourteenth Amendment likewise fails because his claim of malicious prosecution is cognizable under the Fourth Amendment, and "when government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate." Bergdoll v. City of York, 515 F. App'x at 170 (quoting Berg v. Cnty. of Allegheny, 219 F.3d 261, 268-9 (3d Cir. 2000) ("although not all actions by police officers are governed by the Fourth Amendment, ... the constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis").

With regard to Plaintiff's procedural due process claim, the Fourteenth Amendment provides "[n]o state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This right "'cannot be deemed to be satisfied ... if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of

depriving a defendant of liberty through a deliberate deception of court and jury by presentation of testimony known to be perjured.'" Hernandez Fontan v. City of Lancaster, No. 96-5653, 1998 WL 474171 (E.D. Pa. July 31, 1998) (quoting Mooney v. Holohan, 294 U.S. 103, 110 (1935). "Consequently, '[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial....'" Id. (quoting Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997) (citing United States ex rel. Moore v. Koelzer, 457 F.2d 892, 893–94 (3d Cir. 1972)).

To the extent Plaintiff claims a violation of his due process rights based upon Sullivan's conduct, Plaintiff's allegations with regard to concealing evidence are expressly contradicted by the exhibits attached to his Complaint. As is made clear by the trial transcripts, Sullivan testified at trial that the gun was not found at the time of Plaintiff's arrest on September 2, 2010, but was located on September 6, 2010, during Poindexter's arrest in conjunction with a traffic stop. [ECF No. 1-2 pp. 76-81].

Plaintiff also cannot sustain a Fourteenth Amendment claim for an allegedly reckless police investigation. To the extent such a claim survives the dismissal of his malicious prosecution claim, the United States Supreme Court in Baker v. McCollan, supra, rejected a due process claim arising out of an allegedly negligent investigation where probable cause existed at the time of arrest.

> In Baker, the plaintiff's brother procured a duplicate of the plaintiff's driver's license. The brother was arrested on narcotics charges in Potter County, Texas, and was booked and signed various documents as the plaintiff. Bail was granted in the plaintiff's name, and, soon after, a warrant was issued for the arrest of the plaintiff. Several months later on December 26, 1972, the plaintiff was pulled over for running a red light in Dallas, Texas. Based upon the outstanding arrest warrant, the plaintiff was taken into custody. On December 30, 1972, Potter County deputies took custody of the plaintiff. On January 2, 1973, Potter County officials compared a file photograph of the wanted man to the plaintiff, and

determined that he did not match the person depicted. The plaintiff was released that day. Id. at 140–41.

The plaintiff sued the Potter County sheriff pursuant to Section 1983, asserting violations of the Fourteenth Amendment. The Court of Appeals for the Fifth Circuit held that a fact-finder could reasonably conclude that the sheriff acted unreasonably in failing to send identifying materials to Dallas or to compare him to the wanted man immediately upon the plaintiff's arrival in Potter County. The Supreme Court disagreed. It explained that whether plaintiff's incarceration was "wrongful" pursuant to tort-law concepts was irrelevant; the issue was whether plaintiff's incarceration was unconstitutional. The conduct forming the basis of the alleged constitutional violation was the failure to investigate and determine that the wrong person was imprisoned. Id. at 141–43. The Supreme Court held that the plaintiff's allegations did not give rise to a claim under the United States Constitution:

> [The plaintiff]'s innocence of the charge contained in the warrant, while relevant to a tort claim of false imprisonment in most if not all jurisdictions, is largely irrelevant to his claim of deprivation of liberty without due process of law. The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted-indeed, for every suspect released. Nor are the manifold procedural protections afforded criminal defendants under the Bill of Rights "without limits." [Patterson v. New York, 432 U.S. 197, 208, 97 S. Ct. 2319, 53 L.Ed.2d 281, (1977).] "Due process does not require that every conceivable step be taken, at whatever cost, to eliminate the possibility of convicting an innocent person." [Id.]

Whitley v. Allegheny Cnty., No. 07-403, 2010 WL 892207 *31 (W.D. Pa. Mar. 9, 2010) aff'd, 402 F. App'x 713 (3d Cir. 2010).

Similarly, in Lincoln v. Hanshaw, 375 F. App'x 185, 190 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit held that due process arising under the Fourteenth Amendment is satisfied upon the issuance of an arrest warrant predicated upon probable cause, and a claim arising out of the alleged inadequacy of a police investigation cannot be sustained.

> Plaintiffs further contend that the investigation leading to the detectives' determination that probable cause existed was so inadequate as to violate their substantive due process rights under the Fourteenth Amendment. As shown above, however, probable cause was established as a matter of law at the time that Mapp, as a complaining victim who had suffered an injury, made the allegations

against Lincoln and the Zimmermans and correctly identified them. At that time, "the facts and circumstances within [Detective Erle's] knowledge [were] sufficient in themselves to warrant a reasonable person to believe that an offense has been ... committed by the persons to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995). The officers had no further constitutional duty to continue their investigation in an attempt to unearth potentially exculpatory evidence undermining the probable cause determination. See Baker v. McCollan, 443 U.S. 137, 145-46, 99 S. Ct. 2689, 61 L.Ed.2d 433 (1979). The Fourteenth Amendment imposed no obligation on officers to uncover further evidence once probable cause has been established at the time of Lincoln's and the Zimmermans' arrests. Id.

Lincoln v. Hanshaw, 375 F. App'x at 190. This Court has determined that probable cause existed for Plaintiff's arrest based upon the information in Sullivan's possession on August 29, 2006, and therefore Plaintiff cannot sustain a due process claim predicated upon the pre-arrest investigation.

Plaintiff also seeks the imposition of a post-arrest constitutional obligation "to investigate further into the matter to corroborate plaintiff's claim that he never saw nor possessed a gun." [ECF No. 5, pp. 6-7]. Plaintiff alleges that if Sullivan had investigated further, he could have learned that the gun was stolen by "a man named Issac McCants … a week or two before plaintiff was accused on the crime." [ECF No. 5, p. 7].

In Wilson v. Russo, 212 F.3d at 792-93, the United States Court of Appeals for the Third Circuit rejected the imposition of a post-arrest duty on a police officer to seek release of the plaintiff where later acquired information did not dispel the propriety of the initial probable cause to arrest. In Wilson, the plaintiff asserted that a post-arrest interview "provided exculpatory information that dissipated probable cause, and the [defendant] had a constitutional duty to inform the prosecutor of the interview and attempt to get [plaintiff released]." Id. The Court of Appeals acknowledged that the law is unsettled as to the existence of a police officer's

post-arrest duty, but held that where no reasonable juror could conclude that the later acquired evidence dispelled probable cause for arrest, the question need not be reached.  Id. at 793.

In the instant action, Plaintiff does not allege facts which would dispute the existence of probable cause for his arrest. First, with regard to Mr. Hubbard's cognitive abilities, Plaintiff must concede that, as alleged in his Complaint, Mr. Hubbard was capable of operating a vehicle and providing accurate information, including Plaintiff's name and the correct address where Plaintiff was driven and dropped off. [ECF No. 5, p. 3]. This information lends sufficient credence to Mr. Hubbard's ability to describe Plaintiff's conduct in stealing the gun.  Further, with regard to the after-acquired facts surrounding the recovery of the weapon, Poindexter's possession of the weapon a week after Plaintiff's alleged theft does not contradict Mr. Hubbard's statement that Plaintiff stole the gun on August 29, 2006. Plaintiff does not allege that Sullivan was aware of and disregarded evidence that Poindexter or any of his associates came into possession of the weapon from a third-party on a date prior to Plaintiff's alleged theft. [ECF No. 5, p. 5-7].  Instead, Plaintiff finds fault with Sullivan's failure to look for such evidence and seeks the imposition of a constitutional obligation to continue investigating Plaintiff's potential innocence solely because the handgun was found in Poindexter's possession in the days after his arrest and because Plaintiff denied stealing it.  [ECF No. 5, p. 7]. Because these allegations do not contradict the continued viability of probable cause for Plaintiff's arrest, there is no basis for the imposition of a constitutional obligation to continue to investigate Plaintiff's claims of innocence.  See, Wilson v. Russo, 212 F.3d at 792-93; and see, Green v. City of Paterson, 971 F. Supp. 891, 908 (D.N.J. 1997)(where officers never possessed concrete exculpatory information that they deliberately failed to disclose, there is no due process violation arising out of post-arrest conduct).  Accordingly, it is respectfully recommended that Plaintiff's Fourteenth Amendment

due process claim against Sullivan be dismissed. Further, because the exhibits to Plaintiff's Complaint make clear that Sullivan lacked any basis to doubt the validity of probable cause for Plaintiff's arrest at any point up to his trial, it is recommended that this claim be dismissed with prejudice.

### 5. Eighth Amendment Cruel & Unusual Punishment Claim

Plaintiff alleges that Sullivan's conduct resulted in his post-conviction unlawful incarceration, in violation of his right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment. However, "the Eighth Amendment only serves as a 'primary source of substantive protection' after conviction, Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)." Bergdoll v. City of York, at 170-71. Because Sullivan's alleged misconduct occurred prior to and during his arrest and trial, Plaintiff fails to allege facts sufficient to sustain an Eighth Amendment claim against Sullivan. See also Molina v. City of Lancaster, 159 F. Supp. 2d 813, 818 (E.D. Pa. 2001) (plaintiff's Eighth Amendment claim dismissed with prejudice where plaintiff alleged he was beaten, arrested without probable cause, and imprisoned wrongfully for six months while defendants allegedly knew information supporting arrest was false; court held these allegations fell within Fourth Amendment because misconduct at issue arose prior to conviction); Cromwell v. Manfredi, No. 08-1048, 2009 WL 2986609 (W.D. Pa. Sept. 17, 2009) (complaint failed to state a claim under the Eighth Amendment when encounter with defendant police officers and alleged malicious prosecution occurred when plaintiff was a free citizen and not in jail). Accordingly, it is recommended that Plaintiff's Eighth Amendment claims be dismissed with prejudice.

### 6. State Law Claims

Sullivan also moves for the dismissal of Plaintiff's state law claims asserted against him. However, in the absence of any legal analysis and authority, Sullivan has not established his entitlement to dismissal. Therefore, it is recommended that Sullivan's Motion to Dismiss state law claims be denied until such time as all federal claims against all parties are dismissed, and the Court is free to decline to exercise jurisdiction over Plaintiff's state law claims.

### D. CONCLUSION

For the foregoing reasons, is respectfully recommended that the Motion to Dismiss filed on behalf of Defendant Sullivan [ECF No. 10] be granted in part and that all of Plaintiff's federal claims against Defendant Sullivan be dismissed, but that the Motion to Dismiss be denied as to Plaintiff's state law claims.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing

objections may file their response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

Respectfully submitted,

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

Dated: August 27, 2013

cc:     The Honorable David S. Cercone
        United States District Judge

        All counsel of record by Notice of Electronic Filing

        Kevin Roberts
        JV-6013
        SCI Pittsburgh
        P.O. Box 99901
        Pittsburgh, PA 15233