IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN ROBERTS,<br>            Plaintiff,<br><br>   vs.<br><br><br><br>ALLEGHENY COUNTY, a Municipal<br>Corporation and Political Subdivision of<br>The Commonwealth of Pennsylvania;<br>DAN ONORATO, County Executive;<br>DANIEL SULLIVAN, Pittsburgh Police<br>Officer,<br>            Defendants. | )<br>)<br>)<br>) Civil Action No. 12-1296<br>)<br>) Judge David Stewart Cercone/<br>) Magistrate Judge Maureen P. Kelly<br>)<br>)<br>) Re: ECF No. 29<br>)<br>)<br>)<br>)<br>) |

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed on behalf of Defendants Allegheny County and the Allegheny County Executive [ECF No. 29] be granted. It is further recommended that the Court decline to exercise jurisdiction as to all remaining state law claims asserted against any Defendant, dismiss such claims without prejudice to be filed in state court, and order that the Clerk close this action.

**II.    REPORT**

    **A.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Kevin Roberts ("Plaintiff") filed this *pro se* civil rights action against Daniel Sullivan, a City of Pittsburgh Police Officer ("Sullivan"), Allegheny County, and the Allegheny

1

County Executive,[1] alleging violations of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, as well as the violation of his rights under the Pennsylvania Constitution. [ECF No. 5]. Plaintiff's Complaint alleges that his rights were violated when he was arrested without probable cause and then prosecuted and convicted for theft and unlawful possession of a firearm, when a reasonable investigation would have revealed that he could not have committed the crime. Defendants Allegheny County and the Allegheny County Executive Dan Onorato ("Onorato") have filed a Motion to Dismiss, [ECF No. 29], contending that the facts alleged in the Complaint, and as discerned through indisputably authentic documents attached to the Complaint, render all claims asserted against them unsustainable as a matter of law.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

As previously summarized in the Report and Recommendation [ECF No. 43] filed with regard to Defendant Sullivan's Motion to Dismiss [ECF No. 10], on the evening of August 29, 2006, Defendant Sullivan, a City of Pittsburgh Police Officer, was called to the Zone 5 Police Station at the request of his sergeant to investigate a theft. Upon arriving at the station, he met with Nathan Hubbard, who was visibly distraught. Sullivan knew Mr. Hubbard, an elderly gentleman from the Homewood section of the City of Pittsburgh where Sullivan routinely patrolled. Sullivan and fellow officers frequently checked on Mr. Hubbard because of his age and the violent neighborhood in which he resided. [ECF No. 5-2, pp. 28-30, 70, 79-80].

---

[1] On August 27, 2013, this Court entered an Order granting Plaintiff's Motion to Correct/Amend Complaint [ECF No. 34] terminating the current Allegheny County Executive, Rich Fitzgerald, from this action and substituting Dan Onorato, the Allegheny County Executive in office at the time the events complained of took place.

2

Mr. Hubbard reported that Plaintiff approached him and asked for a ride to Kelly Street. Mr. Hubbard had known Plaintiff since he was a child, and so he agreed. As was his usual practice, Mr. Hubbard placed an unloaded .22 caliber gun on the front seat of his truck for protection. After arriving at his destination, Plaintiff reached over to the front seat of the truck with a bag in his hand and slid the gun under the bag. Plaintiff then left the truck, taking the gun and bag with him. Mr. Hubbard yelled at Plaintiff to return the gun, but Plaintiff ran off. [ECF No. 5-2, p. 18]. Mr. Hubbard immediately drove to the Zone 5 police station to report the theft.

Mr. Hubbard identified Plaintiff by name, as well as the Kelly Street address where he drove Plaintiff. After interviewing Mr. Hubbard, Defendant Sullivan went to the Kelly Street address and spoke with Plaintiff's brother to confirm Plaintiff's identity and to ascertain his location. Plaintiff's brother confirmed his relationship with Plaintiff and advised Sullivan that Plaintiff was homeless and did not reside with him. [ECF No. 5-2, pp. 30-32]. Sullivan then searched the Pennsylvania criminal database and learned that Plaintiff was a convicted felon and not eligible to possess a firearm under the Pennsylvania Uniform Firearms Act. Based upon the information received from Mr. Hubbard and his investigation, Sullivan completed a Probable Cause Affidavit in support of a criminal complaint, charging Plaintiff with theft and unlawful possession of a firearm. A warrant was then issued for Plaintiff's arrest. [ECF No. 5-2 pp. 3-15].

Three days later, on September 2, 2006, Sullivan responded to a 911 call at Mr. Hubbard's home, reporting that Plaintiff was on the property. Plaintiff was found hiding in an adjacent wooded area and was placed under arrest. Plaintiff alleges that he explained to Sullivan that he did not steal Mr. Hubbard's gun, but nonetheless he was arrested.

On September 6, 2006, Russell Poindexter ("Poindexter") was arrested for two counts of unlawful possession of a firearm, two counts of possession of a firearm without a license, one

count of receiving stolen property, and one count of possession of marijuana. In the course of his arrest, it was discovered that one of the weapons in Poindexter's possession was the same weapon which had been stolen from Mr. Hubbard. [ECF No. 5-2, pp. 98-100]. This information did not halt Plaintiff's prosecution for allegedly stealing the weapon a week earlier or for unlawfully possessing a weapon.

Plaintiff's preliminary hearing was conducted on September 12, 2006. Mr. Hubbard testified at the hearing as to the events of August 29, 2006. He identified Plaintiff as the individual who grabbed his .22-caliber gun from the front seat of his truck. Mr. Hubbard also explained his long term relationship with the Plaintiff. Defendant Sullivan testified to the facts set forth in the criminal complaint, including his interviews with Mr. Hubbard and Plaintiff's brother, as well as his computer search for Plaintiff's criminal record. Sullivan also testified as to the facts surrounding Plaintiff's subsequent arrest. Plaintiff's attorney attempted to ask Sullivan if he found the gun on or near the Plaintiff on the evening of Plaintiff's arrest. Before Sullivan could answer, the Assistant District Attorney objected that the question was beyond the scope of the direct examination, and the objection was sustained. Plaintiff was held for trial and incarcerated for fourteen months prior to trial. [ECF No. 5-2, pp. 19-29].

A non-jury trial was scheduled to be held on October 16, 2007, before Judge Cheryl Allen in the Criminal Division of the Court of Common Pleas of Allegheny County, Pennsylvania. Judge Allen openly expressed frustration at Plaintiff's belated request to sever the trial of his underlying charges and to seek a jury trial as to the charge of unlawful possession of a weapon. [ECF No. 1-2, pp. 30 – 42]. Judge Allen granted Plaintiff's motion to recuse and the trial was rescheduled before Judge John A. Zottola. [Id.; ECF 5-2, pp. 43-92]. At trial, Plaintiff elected to proceed without a jury as to the theft charge. Mr. Hubbard testified as to his

recollection of events on the night his gun was stolen, again identifying Plaintiff and indicating that Plaintiff ran off with the gun after grabbing it from the front seat of the truck. While Plaintiff has alleged that Mr. Hubbard suffers from dementia, it cannot reasonably be disputed that Mr. Hubbard responded appropriately to questions on direct and cross-examination.

Defendant Sullivan testified as to his history with Mr. Hubbard, the neighborhood Mr. Hubbard lived in, Mr. Hubbard's lack of confusion as to the events surrounding the theft, his own investigation of the theft, and Plaintiff's criminal background. Sullivan also testified that the gun was recovered from Poindexter four days later by Officers Lear and Buford during a traffic stop. [ECF No. 5-2, pp. 76-80]. Sullivan assisted in the transportation of another occupant of the vehicle involved in the traffic stop, and took possession of the gun. Sullivan ran the serial number through a state database and determined the gun was the .22 caliber gun owned by Mr. Hubbard. [Id.; and see EFC No. 5-2, p. 94].

Plaintiff testified on his own behalf, confirmed his familiarity with Mr. Hubbard, and denied that he stole Mr. Hubbard's gun. Judge Zottola found Plaintiff guilty and on February 4, 2008, sentenced Plaintiff to a period of incarceration of five to ten years. [ECF No. 12-4, p. 4].

Plaintiff and his post-conviction counsel filed a series of post-sentencing motions and appeals based on information Plaintiff acquired from Poindexter while both men were incarcerated at the State Correctional Institution at Forest, indicating that the gun at issue had been stolen from Mr. Hubbard at least five days before Plaintiff was in Mr. Hubbard's truck. On September 13, 2010, the Commonwealth of Pennsylvania filed a Petition for Nolle Prosse, indicating that it no longer wished to pursue Plaintiff's prosecution for the crimes charged. [ECF No. 5-3, pp. 1-13]. On September 26, 2010, Judge Zottola ordered the case against Plaintiff nolle prossed. [ECF No. 5, p. 5].

Plaintiff commenced this civil rights action on September 10, 2012. With regard to Defendants Allegheny County and Allegheny County Executive Onorato, Plaintiff's Complaint alleges liability predicated upon the relationship between the County, the County Executive and its employees and elected officials including Allegheny County Public Defenders Michael Mackin and Lena Bryant Henderson, appointed conflict defense counsel Richard Narvin, District Attorney Stephen Zappala, Assistant District Attorney Jack Dwyer, as well as the Court of Common Pleas Prothonotary's Office, Court of Common Pleas Judges Cheryl Allen and John Zottola, and other unidentified County employees. In particular, Plaintiff alleges that each County official and/or employee recklessly and with deliberate indifference, failed to properly investigate Plaintiff's claims of innocence, and thereby violated his rights to due process. [ECF No. 5, pp. 7-13].

> Allegheny County Officials action, or failure to act based on all the information provided to them by plaintiff while he was in pretrial confinement, as well as after his conviction deprived plaintiff Kevin Roberts of his rights. Plaintiff then contacted the Allegheny County Executive Dan Onoroto explaining the entire situation as described in this complaint but never received any response. Plaintiff asserts that the County Executive's inaction amounted to a deprivation of plaintiff Kevin Roberts' rights of due process since every County employee is under the County Executive.

Id. at p. 13. Plaintiff asserts claims arising under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, as well as claims arising under the Pennsylvania Constitution.

B.     **STANDARD OF REVIEW**

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. See Oshiver v. Levin,

Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. In addition, the court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, matters of public record, indisputably authentic documents, Delaware Nation v. Pennsylvania, 446 F.3d 410, 413 n. 2 (3d Cir. 2006), documents that form the basis of a claim, Lum v. Bank of America, 361 F.3d 217, 221 n. 3 (3d Cir. 2004) (*abrogation on other grounds recognized by* In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 323 n. 22 (3d Cir. 2010)), and "documents whose contents are alleged in the complaint and whose authenticity no party questions," even though they "are not physically attached to the pleading...." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). Upon review, a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000).

The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In Twombly, the Supreme Court held that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Supreme Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffic[ient]" to defeat a Rule 12(b)(6) motion to dismiss. Id.

7

at 678.  Only "a complaint that states a plausible claim for relief [will] survive[ ] a motion to dismiss." Id. at 679.

In Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'  The plaintiff must show 'the allegations of his or her complaints are plausible.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief.' [This] 'plausibility' determination will be 'a context – specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

In this case, Plaintiff attached several exhibits to the Complaint. However, consideration of these exhibits by the Court does not convert the pending Motion to Dismiss for failure to state a claim into a motion for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d at 560 ("... certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment"); and see, Spencer v. City of Philadelphia, No. 09-123, 2012 WL 1111141 (W.D. Pa. Apr. 2, 2012).

8

With particular relevance to the instant Motion to Dismiss, Plaintiff has attached to his Complaint the underlying police reports, arrest warrant, probable cause affidavit, as well as trial and post-sentencing hearing transcripts. Plaintiff is on notice of the contents of each document and, therefore, the exhibits to the Complaint may be relied upon without converting the motion to dismiss into a motion for summary judgment. Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Ordinarily, when a complaint is subject to Rule 12(b)(6) dismissal, the court may grant a plaintiff leave to amend a complaint under Federal Rule of Civil Procedure 15, which provides: "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Rule 15, however, "does not permit amendment when it would be futile. Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'" Kenny v. United States, No. 10–4432, 2012 WL 2945683, at *4 (3d Cir. July 19, 2012) (citing Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir.2011)). "The standard for deciding whether claims are futile for the purpose of granting complaint is the same as a motion to dismiss." Spiker v. Allegheny Cnty. Bd. of Prob. & Parole, 920 F. Supp. 2d 580, 592 (W.D. Pa. 2013) (quoting Markert v. PNC Financial Servs. Group, Inc., 828 F.Supp.2d 765, 771 (E.D.Pa.2011)).

### C. DISCUSSION

Section 1983 provides a vehicle for an individual to assert claims for the violation of his or her federal constitutional rights. Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010). When analyzing a Section 1983 claim, the court's initial inquiry must focus on two essential elements: "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities

9

secured by the Constitution or laws of the United States." Parratt v. Taylor, 451 U.S. 527, 535 (1981); see also Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005).

In this action, Allegheny County and County Executive Onorato seek dismissal of Plaintiff's claims because Plaintiff's Complaint does not allege sufficient facts to support a viable Section 1983 claim.

### 1. Allegheny County

With regard to Allegheny County, Section 1983 claims against a municipal entity are significantly different than those against individual officials. The United States Supreme Court has held that municipalities and other local government units qualify as "persons" subject to liability under Section 1983. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690 (1978). However, a municipality cannot incur Section 1983 liability based on a theory of respondeat superior. Id. at 691. Rather, Section 1983 imposes liability "'if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.'" See Connick v. Thompson, ___ U.S. ___, 131 S. Ct. 1350, 1359 (2011)(quoting, Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, (1978). "[U]nder Section 1983, local governments are responsible only for 'their own illegal acts.'" Id., quoting Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). Thus, plaintiffs who seek to impose liability on local governments under Section 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S. at 694.

Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. Id.; Pembaur, supra, at 480–481. These are "action[s] for which the municipality is actually responsible." Connick v. Thompson, ___ U.S. ___, 131 S. Ct. at 1359 (quoting

10

Pembaur, *supra*, at 479–48). A plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989).

The United States Court of Appeals for the Third Circuit has refined these limitations, explaining that policy or custom may be established: (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action, issues an official proclamation, policy or edict," or (2) through a "course of conduct ... when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990) (citations and quotations omitted). These standards ensure that municipalities may incur liability only for deprivations resulting from the decisions of "those officials whose acts may fairly be said to be those of the municipality." Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403–04 (1997); see also Anderson v. Goga, No. 11 – 528, 2011 WL 4737569 (W.D. Pa. Oct. 5, 2011).

In the case at issue, review of the Complaint reveals that Plaintiff does not sufficiently allege any direct participation, whether by custom or express policy, by Allegheny County resulting in the violation or deprivation of his constitution rights. Instead, Plaintiff seeks the imposition of liability because each of the named County officials or employees individually failed to act on his protestations of innocence. No policy or custom is implicated or identified; rather, Plaintiff's Complaint is predicated upon individual decision-making with regard to Plaintiff's defense, prosecution or conviction. Accordingly, it is respectfully recommended that the Motion to Dismiss be granted as to Defendant Allegheny County.

### 2. County Executive Dan Onorato

Defendants argue that Plaintiff fails to state a claim against County Executive Dan Onorato in his individual capacity or in his official capacity. Defendants correctly contend that to establish individual liability against a defendant, "it is a requirement that defendants have a 'personal involvement' in the alleged wrong doing," citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) and Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). The United States Court of Appeals for the Third Circuit in Rode explained that "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," and that "liability cannot be predicated solely on the operation of respondeat superior." Rode, 845 F.3d at 1207.

Thus, a supervisory defendant can be held liable if he or she played an "affirmative part" in the complained-of misconduct. See Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (citing Rizzo v. Goode, 423 U.S. 362, 377 (1976)). In this regard, the Court of Appeals has stated that "a supervisor may be personally liable ... if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (footnote omitted). Further, "a supervisor may be liable under § 1983 if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011) (citing Brown v. Muhlenberg Township, 269 F.3d 205, 216 (3d Cir. 2001).

In this case, Plaintiff argues that Defendant Onorato is liable in his supervisory capacity but Plaintiff fails to allege any facts specific to Defendant Onorato except that he was the Allegheny County Executive at the time the incident allegedly occurred and that, *after* his conviction, he wrote to Defendant Onorato complaining about the conduct of County officials and employees. See ECF No. 5, p. 12. Plaintiff has failed to set forth the requisite level of contemporaneous personal involvement and it is clear from the Complaint that he seeks to hold Defendant Onorato liable based on respondeat superior, which cannot be done. For these reasons, Defendant Onorato in his individual capacity must be dismissed from this action with prejudice. Kennedy v. Onorato, No. 12-113, 2013 WL 2642020 (W.D. Pa. June 12, 2013).

Further, to the extent Plaintiff alleges claims against Defendant Onorato in his official capacity, "a suit against a state official in his or her capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Indeed, "[a]s long as the government entity receives notice and an opportunity to respond, an official capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (citing Brandon, 469 U.S. at 471–72). Because Defendant Onorato was the Chief Executive of Allegheny County during the time period at issue and Allegheny County is already named as a Defendant; Defendant Onorato must also be dismissed in his official capacity, with prejudice.

### 3. Leave to Amend

It is recommended that the dismissal of Plaintiff's action be with prejudice because any amendment to Plaintiff's Complaint would be futile inasmuch as each individual identified by

Plaintiff in his Complaint participated in his prosecution, legal defense or conviction and, under the facts alleged, is immune from suit.

First, it is well settled that attorneys, including public defenders, acting on behalf of their clients are not state actors, and therefore, cannot be held liable under Section 1983. See Polk County v. Dodson, 454 U.S. 312, 325 (1991) (public defender not a state actor "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). To the extent that Plaintiff may be attempting to set forth either a legal malpractice or an ineffective assistance of counsel claim, such claims are not proper Section 1983 claims. See, e.g., Shaw v. Stackhouse, 920 F.2d 1135 (3d Cir. 1990) (Section 1983 is designed to address constitutional deprivations, not torts). Accordingly, Plaintiff's allegations do not support a Section 1983 claim against public defender Lena Bryant Henderson, or appointed conflict public defender Richard Narvin, each of whom are identified by Plaintiff's Complaint as public defenders who participated in the defense of his underlying criminal charges.

Similarly, prosecutors should not be encumbered by the threat of civil liability while performing judicial or quasi-judicial functions. See Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008). A prosecutor enjoys absolute immunity from liability for actions taken in connection with judicial proceedings. Id., (citations omitted), *aff'd sub. nom.*; Schneyder v. Smith, 653 F.3d 313 (3d Cir. 2011). This immunity attaches to the prosecutor's decision to initiate a prosecution and generally includes activities conducted in court, such as presenting evidence or legal arguments. See Imber v. Pachtman, 424 U.S. 409, 424 (1976). Prosecutorial activities outside the courtroom receive the same protection if they are "intimately associated with the judicial phase of the

criminal process." Van de Kamp v. Goldstein, 555 U.S. 335, 341 (2009) (quoting Imber, 424 U.S. at 430).

Thus, even the "deliberate withholding of exculpatory information is included within the legitimate exercise of prosecutorial discretion." Yarris, 465 F.3d at 137, quoting Imbler, 424 U.S. at 431–32 n. 34. See also Smith v. Holtz, 210 F.3d 186, 199 n. 18 (3d Cir. 2000) (finding that a prosecutor's decision not to disclose exculpatory evidence to defendant's counsel was protected under absolute prosecutorial immunity).[2]

> Courts confronted with claims challenging a prosecutor's actions must utilize a functional analysis to determine whether or not the prosecutor acted within his or her "judicial capacity" when attempting to apply absolute immunity. Ross v. Morgan, 638 F.2d 646, 648 (3d Cir. 1981). See also Rose v. Bartle, 871 F.2d at 343. Actions that relate to the prosecutor's role as an advocate are "judicial" actions. Mancini v. Lester, 630 F.2d 990, 993 (3d Cir. 1980). The decision to initiate a prosecution is at the core of a prosecutor's judicial role. Imbler, 424 U.S. at 430–31. In that regard, a prosecution in protected by the doctrine of absolute immunity, even where he acts without a good faith belief that any wrongdoing has occurred. Rose v. Bartle, 871 F.2d 331, 346 (3d Cir. 1989). See also Ernst v. Child and Youth Services of Chester County, 108 F.3d 486 3d Cir. 1997) (caseworkers were entitled to absolute immunity for their actions discharged on behalf of state in preparing for, initiating, and prosecuting dependency proceedings); Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) (even groundless charges are protected by absolute immunity in the interest of maintaining the vigorous prosecution of the crime). Thus, it is well settled that prosecutors are absolutely immune from claims for malicious prosecution, for solicitation of perjured testimony, and for conspiracy with state actors while engaged in an advocacy role. See Rose; Imbler; Ross.

Ireland v. McDaniel, No. 10-387, 2011 WL 860390 (W.D. Pa. Jan. 27, 2011) *report and recommendation adopted*, 2011 WL 860346 (W.D. Pa. Mar. 9, 2011),

---

[2] Plaintiff cites Smith v. Hotlz, *supra*, for the proposition that he has stated a Section 1983 due process claim against both the Assistant District Attorney who conducted the preliminary hearing and/or Assistant District Attorney Dwyer because both prosecutors are alleged to have intentionally suppressed exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963); i.e., evidence that Hubbard's gun was found on Poindexter seven days after the alleged theft. See, ECF No. 44, p. 3. Contrary to Plaintiff's position, the Court of Appeals in Smith specifically held that a prosecutor who withholds evidence "has absolute immunity from liability in [plaintiff's] § 1983 action so long as he was functioning in his prosecutorial capacity when he made that decision." Smith, at 199 n.18. Plaintiff does not allege misconduct arising out of a non-prosecutorial function and therefore he cannot maintain a Section 1983 claim against any participating prosecutor.

15

Accordingly, neither Assistant District Attorney Jack Dwyer nor District Attorney Stephen Zappala can be liable to Plaintiff for their individual roles in Plaintiff's prosecution.

Further, Public Defender Michael Mackin and District Attorney Stephen Zappala cannot be liable under the theory of respondeat superior for the actions taken by subordinate public defenders or prosecuting Assistant District Attorney Jack Dwyer. It is well-settled law that respondeat superior is not an "appropriate theory" for asserting supervisory liability in a Section 1983 civil rights action. See Monell v. New York City Dept. of Social Servs., 436 U.S. at 691. In addition, as set forth *supra*, in order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." Evancho v. Fisher, 423 F.3d at 353. Plaintiff would need to allege that at the time of his preliminary hearing or trial, either Public Defender Michael Mackin or District Attorney Zappala "[gave] personal direction or [had] actual knowledge [of] and acquiescence" in the alleged constitutional violation. Rode v. Dellarciprete, 845 F.2d at 1207. Plaintiff has not alleged any facts demonstrating that Public Defender Michael Mackin or District Attorney Zappala supervised the assigned attorneys or had any personal involvement in the case. Therefore, neither Public Defender Michael Mackin nor District Attorney Zappala can be liable to Plaintiff based upon a theory of respondeat superior.

Lastly, Judge Cheryl Allen and Judge John Zottola, are insulated from liability by judicial immunity. Judicial immunity is "immunity from suit, not just from an ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Judicial officers are immune from damage suits arising out of their official duties. Stump v. Sparkman, 435 U.S. 349 (1978); Piskanin v. Hammer, 2005 WL 613644 (E.D. Pa., 2005) (applying judicial immunity to "district justice"). "A judge will not be deprived of immunity because the action he took was in error, was done

16

maliciously, or was in excess of authority...." Sparkman 435 U.S. at 356. See also Benn v. First Judicial District, 426 F.3d 233 (3d Cir. 2005) (applying Eleventh Amendment immunity to courts); Seigert v. Gilley, 500 U.S. 226, 231 (1991) ("One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."); In Re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000) ("Absolute immunity creates not only protection from liability, but also a right not to stand trial.").

Thus, to the extent Plaintiff's Complaint infers claims against non-party County officials and/or employees, it is apparent that any amendment to his Complaint to include such claims is futile. Dismissal of the Complaint with prejudice is appropriate.

**D.     CONCLUSION**

For the foregoing reasons, is respectfully recommended that the Motion to Dismiss [ECF No. 29] be granted and that Plaintiff's Complaint be dismissed with prejudice. In addition, to the extent any state law claims remain as to Defendants Allegheny County or the County Executive, or as to Defendant Sullivan, it is respectfully recommended that the Court decline to exercise its discretionary jurisdiction and dismiss Plaintiff's state law claims without prejudice to file such claims in state court and order the Clerk to close this case.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2, the parties are permitted to file written objections no later than _____. Objections are to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n. 7 (3d Cir. 2011). Any party opposing objections may file their

response to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

>Respectfully submitted,
>
>/s/ Maureen P. Kelly
>MAUREEN P. KELLY
>UNITED STATES MAGISTRATE JUDGE

Dated: November 8, 2013

cc: The Honorable David S. Cercone
United States District Judge

All counsel of record by Notice of Electronic Filing

Kevin Roberts
JV 6013
SCI Pittsburgh
Box 99991
Pittsburgh, PA 15233